FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

00 FEB -1  AM 8: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

DAVID BOWEN,                              )
                                          )
          Plaintiff,                      )
                                          )     CV 99-BU-0796-M
vs.                                       )
                                          )
CITY OF GADSDEN, ALABAMA, et al.,         )     **ENTERED**
                                          )
          Defendants.                     )     FEB 0 1 2000

## Memorandum Opinion

This cause comes to be heard on a motion for summary judgment filed by the Defendants, the City of Gadsden, Alabama ("Gadsden"), and Officer Kenneth Pollard ("Pollard"), on December 1, 1999. In their motion, Gadsden and Pollard contend that they cannot be held liable for claims asserted against them by the Plaintiff, David Bowen ("Bowen"). In particular, Pollard contends, first, that he cannot be held liable for Bowen's claim of excessive force under the Fourth Amendment brought pursuant to 42 U.S.C. § 1983 because (1) he committed no constitutional violation and (2) he is entitled to qualified immunity and, second, that he cannot be held liable on Bowen's state law claims because he is protected by state law discretionary function immunity. Gadsden argues that there is no municipal liability for Bowen's alleged constitutional claim and that municipal immunity protects it from suit on Bowen's state law claims.

28

# Standard of Review

Summary judgment offers the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. In evaluating a motion for summary judgment, the court assesses all of the proof the parties can bring to bear to ascertain the presence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Federal Rule of Civil Procedure 56, the court's determination of the propriety of summary judgment is to be tempered by a strong inclination in favor of the non-movant. Therefore, only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law is a grant of summary judgment appropriate. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is the initial responsibility of the movant to inform this court of the grounds for its motion and to specifically identify those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The movant carries no meager burden, for it must illuminate for the district court, with reference to materials on file, the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). *But see Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998) ("When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' [*Celotex*] at 323 [], in order to discharge this initial responsibility. Instead, the moving party simply may '"show[ ]" — that is, point[ ] out to the district court — that there is an absence of evidence to support the nonmoving party's case.'").

Only after the moving party has satisfied this initial burden must the nonmoving party "make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). At that point, Federal Rule of Civil Procedure 56(e) dictates that the nonmoving party "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' then the court must enter summary judgment for the moving party." *Gonzalez v. Lee County Housing Authority*, 161 F.3d at 1294 (11th Cir. 1998). Bare speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *See id.*

While the district court is permitted to consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the non-movant bears the absolute responsibility of designating the specific facts in the record that support its claims. *See United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). In other words, Federal Rule of Civil Procedure 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id. See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, 516 U.S. 817(1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55. Nonetheless, the court must abstain from examining the probity of conflicting evidence and from deciding issues of credibility. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Still though, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## Facts[1]

On the evening of May 23, 1998, a somewhat inebriated Bowen led officers of the Gadsden City Police Department in a high-speed chase, driving his car through the streets of the City of Gadsden, Alabama, in an attempt to avoid capture and to avoid the unfavorable legal consequences such capture would bring.[2] Eventually, Bowen's attempt to outrun the police was halted when his path was blocked by a police car. Bowen's car having stopped, an unnamed deputy police officer, apparently the individual who had

---

[1] The facts recited herein may not be the facts borne out at trial. They are, rather, the facts as reasonably viewed in the light most favorable to Bowen.

[2] Not only was Bowen intoxicated while driving, he was also driving without a license, an item that had earlier been revoked because of, apparently, a previous DUI ("driving under the influence of alcohol") conviction.

blocked Bowen's path, approached the car and pulled the keys from the its ignition. Bowen had been captured and his attempts at resistence were over.

The chase being over, another officer who participated in the fourteen-car pursuit, Pollard, left his patrol car and ran to Bowen's side of the automobile. Events then took a violent turn. Allegedly without provocation, Pollard reached though the window of Bowen's car and struck him, causing an audible, wet thud to issue from the car's interior.[3] Pollard then pulled Bowen from the car onto the street. Grabbing Bowen by the head, Pollard pushed him headlong into side of the car. Bowen still stirred. Again, Pollard pushed Bowen's head against the metal of the car. Bowen collapsed, unconscious on the pavement. To be certain that Bowen would not move, Pollard fired pepper spray at him. Then, Pollard returned to and leaped upon his car, threatening to "kick ass."

Other officers, who had witnessed this, attempted to lift Bowen from the ground. However, he collapsed again. They turned to Pollard and told him to calm himself, that his actions were likely the subject of videotape recording in one of the officer's automobiles.[4] An ambulance was then called and Bowen was carried away for treatment of bruises, lacerations, a blood clot, a black eye, bloodied nose and bloodied gums.

---

[3] Pollard disputes Bowen's assertions that Pollard's actions were unprovoked, stating that when he stepped from his car, he saw Bowen with his arm over the seat, attempting to back his car over various officers. Further, Pollard asserts, Bowen is incapable of demonstrating otherwise, as his witness has averred that she could not see into the automobile. However, the events offered by Pollard to support his alleged belief that Bowen was resisting arrest apparently occurred *after* the deputy had pulled the keys from Bowen's automobile. If the jury were to believe the narrative in which the deputy pulled the keys from the car prior to Pollard's viewing any action, they would quite reasonably conclude Pollard's account of the facts to be false.

[4] This videotape has not been produced for purposes of summary judgment and the Court is uncertain whether there was any request for production regarding this videotape. While such might have gone a long way in resolving much of the disputes herein, its absence does not affect the outcome of the present motion.

## Contentions & Analysis

Bowen alleges two claims against Pollard and Gadsden. He first alleges that Pollard violated the proscriptions of the Fourth Amendment to the Constitution against unreasonable searches and seizures in employing excessive force to arrest him and that Gadsden can be held liable for Pollard's constitutional violation. Bowen also avers that Pollard committed an excessive-force battery of him in violation of state law and that Gadsden can be held responsible for Pollard's state-law tort. The Court will treat the claims against Pollard before addressing the claims against Gadsden.

### I. CLAIMS AGAINST POLLARD.

Against Bowen's claim of excessive force in violation of the Fourth Amendment, Pollard contends that no constitutional violation occurred. Even if there were such a violation, Pollard asserts, he is entitled to qualified immunity from suit on the constitutional claim. Similarly, Pollard denies that he can be held responsible for a battery under state law because he is protected by discretionary function immunity.

### A. Fourth Amendment excessive force claim.

As has been recognized by the Supreme Court, the first duty of a federal district court resolving the issue of qualified immunity is to determine the existence of a constitutional violation.

> . . . A court evaluating a claim of qualified immunity "*must* first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. —, — (1999) (slip op., at 4). This order of procedure is designed to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 [] (1991).

> Deciding the constitutional question before addressing the qualified immunity
> question also promotes clarity in the legal standards for official conduct, to the
> benefit of both the officers and the general public. *See County of Sacramento v.*
> *Lewis*, 523 U.S. 833, 840-842, n. 5, (1998).

*Wilson v. Layne*, — U.S. —, —, 119 S.Ct. 1692, 1697 (1999) (emphasis added). Also see

*Hartley v. Parnell*, 193 F.3d 1263, 1268 & 1271 (11ᵗʰ Cir. 1999) and *Bevill v. UAB Walker*

*College*, 62 F.Supp.2d 1259, 1282 (N.D.Ala. 1999). As the Eleventh Circuit Court of

Appeals has characterized it, the resolution of the merits of the constitutional claim "is

the earlier one of two stages of the qualified immunity inquiry," *Hartley*, 193 F.3d at 1271,

and it is to that first stage of the inquiry that the Court now turns.

"[E]xcessive force claims under the Fourth Amendment refer to unreasonable force

or physical contact exerted by law enforcement agents in the context of arrests,

investigatory stops, and seizures of people." *Crosby v. Paulk*, 187 F.3d 1339, 1351 (11ᵗʰ

Cir. 1999). The first excessive force case examined under the Fourth Amendment is

*Tennessee v. Garner*, 471 U.S. 1 (1985), in which the plaintiff brought a claim of excessive

force on behalf of his deceased son, who was shot by police while fleeing arrest. The

Court addressed the claim as a Fourth Amendment issue, stating that "[b]ecause one of

the factors [in resolving the reasonableness of a seizure] is the extent of the intrusion, it

is plain that reasonableness depends on not only when a seizure is made, but also how it

is carried out." *Id.* at 8. Four years later, the Supreme Court decided *Graham v. Conner*,

490 U.S. 386, 393 (1989), in which it articulated the features of the police action a court

should attend in resolving a Fourth Amendment excessive force claim:

> Determining whether the force used to effect a particular seizure is
> "reasonable" under the Fourth Amendment requires a careful balancing of "'the
> nature and quality of the intrusion on the individual's Fourth Amendment
> interests'" against the countervailing governmental interests at stake. [*Tennessee v.*
> *Garner*, 471 U.S.] at 8 [], *quoting United States v. Place*, 462 U.S. 696, 703 [] (1983).
> Our Fourth Amendment jurisprudence has long recognized that the right to make
> an arrest or investigatory stop necessarily carries with it the right to use some

degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio*, 392 U.S., at 22-27 []. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 [] (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S., at 8-9 [] (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure").

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio, supra*, 392 U.S., at 20-22 []. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, *Hill v. California*, 401 U.S. 797 [] (1971), nor by the mistaken execution of a valid search warrant on the wrong premises, *Maryland v. Garrison*, 480 U.S. 79 [] (1987). With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Scott v. United States*, 436 U.S. 128, 137-139 [](1978); *see also Terry v. Ohio, supra*, 392 U.S., at 21 [] (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *See Scott v. United States, supra*, 436 U.S., at 138, 98 S.Ct., at 1723, *citing United States v. Robinson*, 414 U.S. 218 [] (1973).

*Graham v. Conner*, 490 U.S. at 396-97. "Öf course, in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen." *Id*. at 399.

Consequent to *Graham*, the Eleventh Circuit Court of Appeals has developed a fact-sensitive approach to determining the reasonableness of the force used by officers in affecting a seizure, in which a court is to examine whether any of the force used was necessary to effect the arrest and, of the force that was not, whether it was reasonable in light of the factors announced in *Graham*, i.e., "the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing." *Post v. Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994). As the Eleventh Circuit Court of Appeals recently stated in *Crosby v. Paulk*, 187 F.3d at 1351:

> In making [the] objective assessment [of the reasonableness of the use of force], a court may consider in addition to the physical injury '[o]ther relevant factors includ[ing] the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of affecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. . . . Thus the objective reasonableness analysis of excessive force not only balances the nature and quality of the intrusion on an individual's Fourth Amendment rights with the importance of the justifying government interests but also assesses the use of force' from the perspective of a reasonable officer on the scene, rather than with the 20/20 hindsight' under the totality of the circumstances, disregarding intent.

(Internal citations omitted.) This court undertakes this analysis in the light that the reasonable officer would have viewed the circumstances with which the actual officer was presented. *See Post*, 7 F.3d at 1559.

The facts in this case, as read in the light most favorable to Bowen, demonstrate the use of excessive force. First, a reasonable trier of fact could find that the force used by Pollard was not the consequence of any instinct of self-preservation or of any desire to prevent flight by Bowen. Bowen's attempt at flight had ended. The keys were no longer in his car and he was putting up no fight. Further, the trier of fact could rationally determine that Bowen (and his passenger) posed no danger to Pollard, who was accompanied by at least thirteen other police officers in his chase. There is no indication or averment that Bowen was armed or appeared to be armed. The crime(s) for which Bowen was arrested, while somewhat severe, did not give rise to a reasonable inference that Bowen would be highly resistant. Finally, the Court notes that the violence employed against Bowen by Pollard was extreme, consisting of hitting Bowen while he sat in the car, of smashing Bowen's face twice against the side of the car and of using pepper spray on Bowen once he was unconscious upon the ground. Having concluded that a reasonable trier of fact could conclude that Pollard's use of force was unreasonable and excessive, the Court now turns to the issue of whether Pollard is immune from suit for his constitutional violation.

The Eleventh Circuit Court of Appeals has offered no shortage of pronouncements concerning the scope and power of qualified immunity. *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149-51 (11th Cir. 1994) (en banc), clearly provides "standards" by which to evaluate claims of qualified immunity. In it, the Eleventh Circuit Court of Appeals put forward numerous broad guidelines to govern the analysis of qualified immunity issues in this circuit.

"I. Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 1149 (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982) and citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)). Qualified immunity is both a shield and a sword; it provides officers performing discretionary functions, on the one hand, freedom from liability for damages where they have arguably committed constitutional violations and, on the other, freedom to act without fear of retribution in cases where their actions are arguably suspect, but not clearly so. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11ᵗʰ Cir. 1995) (reversing district court in part, stating that "because qualified immunity is a defense only to claims for monetary relief, the district court erred in granting summary judgment on plaintiffs' claims for injunctive and declaratory relief"). Those aspects of the officer's job deemed to be purely "ministerial" or that lie outside the scope of the officer's discretionary job functions are not protected; but, where an officer is called upon to use his good judgment in the execution of his duties, he is protected from the burden of suits where his judgments were within the boundaries of then-defined constitutionally or statutorily permitted conduct. *See Harlow v. Fitzgerald*, 457 U.S. at 818.[5] *Green v. Brantley*, 941 F.2d 1146, 1150 (11ᵗʰ Cir. 1991)("*Harlow* recognized that for defendant officials, a pending civil rights lawsuit is a sword of Damocles.").

"II. That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d at 1149 (citing *Harlow v. Fitzgerald*, 457 U.S. at 818). The broad design of qualified

---

[5] "When a defendant government official raises the defense of qualified immunity, first he must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Suissa v. Fulton County, Georgia*, 74 F.3d 266, (11ᵗʰ Cir. 1996) (citing *Sammons v. Taylor*, 967 F.2d 1533, 1539 (11ᵗʰ Cir. 1992)). However, "the showing that a defendant official must make to avail himself of the qualified immunity defense varies depending upon the degree of discretion that he exercises in performing his official duties." *Douthit v. Jones*, 619 F.2d 527, 534 (5ᵗʰ Cir. 1980) (characterizing the range of discretion given officers as broad). Only after this showing is made need the plaintiff demonstrate that the defendant is not entitled to qualified immunity. *Id.*

immunity is to protect all but the most brazen, hardened violators of a plaintiff's constitutional or statutory rights and those whose incompetence is without question from having to bear the costs of a constitutional or statutory violation. Put more bluntly, qualified immunity is a judicial choice to interpose a common-law limitation on damages to constitutional actions with the goal of placing the burden of bearing the costs of unrecognized constitutional violations on the victims of those violations, rather than on the perpetrators, who often are insured against the costs of such violations, or the municipal unit, which is often insured and can distribute the costs among the unwilling community. *Id* ("Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.").

District courts have been cautioned to "think long and hard before stripping defendants of immunity." *Id.* This is certainly not an admonishment to a district court to wax philosophical before exposing a defendant to liability for a violation of § 1983 where it should clearly be denied. Rather, it is a restatement of the requirement that district courts are to pay careful attention to the facts and law relevant to the constitutional violation at issue and not deny qualified immunity where there exists an element of the constitutional or statutory claim on which the plaintiff has not presented sufficient facts that could demonstrate a violation under the relevant clearly established law. Nonetheless, where the defendant requests qualified immunity on summary judgment, reasonable inferences of fact are to be drawn narrowly in favor of the plaintiff; a broad inference that may be permissible in another setting may not be permissible when qualified immunity is at issue.

"III. For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually

defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There are two aspects to this requirement, one relating to the level of generality on which the constitutional right is to be established and another relating to what constitutes applicable clearly established law.

> "General propositions have little to do with the concept of qualified immunity." *Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11ᵗʰ Cir. 1987). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993), *modified*, 14 F.3d 583 (11ᵗʰ Cir. 1994); *accord Kelly v. Curtis*, 21 F.3d 1544, 1554 (11ᵗʰ Cir. 1994). "The line is not to be found in abstractions — to act reasonably, to act with probable cause, and so forth — but in studying how these abstractions have been applied in concrete circumstances." *Barts*, 865 F.2d at 1194. And, as the en banc court recently accepted:
>> When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. *See, e.g.*, *Edwards v. Gilbert*, 867 F.2d 1271, 1277 (11ᵗʰ Cir.1989). Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.
> *Adams v. St. Lucie County Sheriff's Dept.*, 962 F.2d 1563, 1573, 1575 (11ᵗʰ Cir. 1992), (Edmondson, J., dissenting) (emphasis added), *approved en banc*, 998 F.2d 923 (11ᵗʰ Cir. 1993).

*Id.* at 1149-50. Factual similarity as described here is not factual similarity for its own sake. Rather, factual similarity acts, in some respects, as an aid to defining, in concrete form, the constitutional or statutory right at issue. To some degree the material similarity requirement is an outgrowth of earlier caselaw of qualified immunity, under which a district court was advised to avoid the question of whether a constitutional violation exists under present law. Under the prior regime, a district court need only look to see if, in another case with materially similar facts, a constitutional or statutory violation had been found. If not, then there was no need to proceed any further; the officer was entitled to qualified immunity.

As district courts have been instructed by the Supreme Court to consider whether a statutory or constitutional violation exists under present law before addressing the issue of qualified immunity, the issue of factual similarity does not serve entirely the same role. Under present law, a court determining whether a statutory or constitutional right exists under present law will be required to analyze the facts of the case and present the factors relevant to determining the existence of the right in some detail. If a statutory or constitutional right is found, the fine-grain contours of the explicated right are to be compared to similar or identical rights described in previous relevant cases to determine whether the specific right recognized in the present case has been clearly established.

Subsequent to *Lassiter*, the Eleventh Circuit Court of Appeals, in *Jenkins by Hall v. Talladega City Board of Education*, 115 F.3d 821, 825 n.4 (11th Cir. 1997) (en banc), *cert. denied*, — U.S. —, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997), noted that "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." However, in *Wilson v. Layne* — U.S. —, 119 S.Ct. 1692, the Supreme Court apparently relaxed this requirement, indicating that a plaintiff can demonstrate the existence of clearly established law not only by pointing out "cases of controlling authority in their jurisdiction at the time of the incident," but also through reference to "a consensus of cases of persuasive authority." *Id.* at 1700.

"For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow  or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d at 1150. Although reasonable officers are not required to be "creative or imaginative in drawing analogies from previously decided cases," *Adams v. St. Lucie County Sheriff's Dept.*, 962 F.2d, 1563, 1575, they are not to be treated as mindless robots,

unable to draw clear inferences from prior cases in determining whether a constitutional right is clearly established. If prior caselaw clearly establishes each element of a right, even if in different cases, such that all that is required to demonstrate the right in the instant case is to "add together" each of those established elements, the right is clearly established such that no reasonable officer could conclude otherwise.

"IV. Because qualified immunity is a doctrine of practical application to real-life situations, courts judge the acts of defendant government officials against the law and facts at the time defendants acted, not by hindsight, based on later events." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d at 1150 (citing *Hunter*, 502 U.S. at 228, 112 S.Ct. at 537, for the proposition that "the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed five years after the fact").

"V. The subjective intent of government actor defendants plays no part in qualified immunity analysis." *Id*. The reasonableness of the officer is not determined by his "good faith" but by whether a reasonable officer, given the facts as apprehended by the actual officer at the time of the alleged violation, would have known based on either previously explicated Supreme Court, Eleventh Circuit Court of Appeals and Alabama Supreme Court authority or a persuasive, uncontradicted body of authority from other jurisdictions, that his actions would violate a constitutional or statutory right.

> VI. A decision on qualified immunity is separate and distinct from the merits of the case — a principle illustrated by the Supreme Court's willingness to treat the denial of qualified immunity at summary judgment as an appealable collateral order. *Mitchell*, 472 U.S. at 527-29 [] ("it follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated"); *Green v. Brantley*, 941 F.2d 1146, 1151-52 (11th Cir.1991) (en banc) ("whether the defendant official is entitled to qualified immunity on a particular damage claim is also conceptually distinct from the substantive merits" for purposes of collateral

review doctrine). Immunity contemplates exemption from liability that would otherwise exist on the merits.

*Id.* at 1151. See *also Jenkins by Hall v. Talladega City Board of Education*, 115 F.3d at 823.

"When a defendant government official raises the defense of qualified immunity, first he must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Suissa v. Fulton County, Ga.*, 74 F.3d at 269 (*quoting Sammons v. Taylor*, 967 F.2d 1533, 1539 (11th Cir. 1992). There is no indication that, at least insofar as federal qualified immunity is concerned, that Pollard was not acting within his discretionary authority. The issue for the Court, therefore, is whether Pollard acted in a way that is in obvious contravention of clearly established law. In the context of a claim of excessive force, the Eleventh Circuit Court of Appeals has stated that the relevant test is whether "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997). It is clear that a reasonable trier of fact could find such to be the case here. The central precept of the constitutional requirement that an officer not use excessive force is that an officer should not use deadly force where there is no threat of death or danger, should not be brutal where the suspect is not being brutish or boorish and should not employ a fist when there is no fight. Here, Bowen has presented a genuine issue of triable fact that no sincere cause existed for the use of force by Pollard that resulted in Bowen being transported by ambulance to a hospital. On this issue, therefore, summary judgment will be DENIED.

## B. State-law battery claim.

Bowen contends that the same facts that support an excessive force claim support a battery claim against Pollard under Alabama law. Pollard does not dispute that his actions, if seen in the light most favorable to Bowen, constitute battery. Rather, Pollard

responds to the claim of battery that he is protected by discretionary function immunity from suit under Alabama law. Discretionary function immunity is the state-law equivalent of qualified immunity, granting an officer immunity from suit in those instances in which he is performing a discretionary function and a reasonable officer in his position would not have found his acts to be in contravention of clearly established state law. *See* Ala. Code § 6-5-338.

> If [the] acts [of a defendant] were discretionary acts, the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity. "Acts of such nature are not considered by Alabama law to be discretionary." *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996). Discretionary acts have been defined as "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Id.* at 2. *See also L.S.B. v. Howard*, 659 So.2d 43, 44 (Ala.1995).

*Sheth v. Webster*, 145 F.3d at 1238-39. "[A]n employee is not protected by discretionary function immunity if his actions were committed fraudulently, willfully, maliciously, or in bad faith." *Tuscaloosa County v. Henderson*, 699 So.2d 1274, 1278 (Ala. 1997). A reasonable jury could find the character of the acts to be unprovoked and to be inspired more by a an unlawful motive than by an attempt to reign in dangers posed by Bowen. Upon completion of his administration of physical force upon Bowen, Pollard leapt upon his car and threatened generally to "kick ass," giving rise to an inference that Pollard did not use force against Bowen for legitimate reasons. On this issue, summary judgment will be DENIED.

## II. CLAIMS AGAINST GADSDEN.

Bowen asserts the same constitutional and state law claims against Gadsden that he asserts against Pollard. In response, Gadsden contends, against Bowen's claim of excessive

force in violation of the Fourth Amendment, both that no constitutional violation occurred, and that even were such to have occurred there is no municipal liability for the actions. Gadsden further contends that it is protected by municipal immunity from Bowen's state-law battery claim.

## A. Excessive force claim under § 1983.

The Supreme Court has, with some degree of clarity, developed the contours of municipal liability for constitutional violations by municipal officers sued under 42 U.S.C. § 1983. As reiterated by the Eleventh Circuit Court of Appeals in *Gold v. City of Miami*, 151 F.3d 1346, 1349 (11th Cir. 1998):

> The Supreme Court has placed strict limitations on municipal liability under section 1983. There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers in making a false arrest. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 [] (1978). Instead, a municipality may be held liable for the actions of a police officer only when municipal "official policy" causes a constitutional violation. *See id.* at 694-95 []. [A plaintiff] must "identify a municipal 'policy' or 'custom' that caused [his] injury," *Board of County Com'rs v. Brown*, 520 U.S. 397, ---, 117 S.Ct. 1382, 1388 (1997) (*citing Monell*, 436 U.S. at 694, 98 S.Ct. 2018); "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 [] (1989).

In addition to being liable where there is a stated written policy causing a constitutional violation, a municipality can be held liable where there is no explicit policy, but a custom of permissiveness with respect to the alleged violation exists, where the municipality is deliberately indifferent to the constitutional violations or where a final policymaker causes the constitutional malfeasance.

Bowen premises municipal liability both on an alleged policy of permitting the use of excessive force by officers in the Gadsden Police Department and on an alleged failure

to train the officers of the force, and particularly Pollard in light of past Fourth Amendment violations. The Court finds both of these grounds to be unsupported. First, as shown by a copy of Gadsden's rules regarding force, there is in place a policy against the use of excessive force. Second, officers of the Gadsden Police Department, including Pollard, are required to undergo forty to eighty hours of training annually on arrest procedures, including the use of force. Finally, there is no prior clear record of excessive force by Pollard.

> To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. *See Board of County Com'rs v. Brown*, 520 U.S. 397, --- - ---, 117 S.Ct. 1351 1382, 1390-91, (1997); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171-72 (11th Cir. 1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342-46 (11th Cir. 1994); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556-57 (11th Cir. 1989). This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. For example, in *Wright v. Sheppard*, 919 F.2d 665 (11th Cir.1990), this Court held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse . . . put the sheriff on notice of the need for improved training or supervision." Id. at 674. Indeed, in *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994), this Court reversed a district court's preliminary injunction against the City of Huntsville, holding that the plaintiffs were not likely to succeed on the merits of their failure- to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated. *Id.* at 1342-46. *See also Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train). More importantly, in *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987), even though there had been ten citizen complaints about police officer Scheib, this Court held that the City did not have any notice of past police misconduct *because the plaintiff "never demonstrated that past complaints of police*

> *misconduct had any merit." Id.* at 1193. This Court aptly noted, "Indeed, the
> number of complaints bears no relation to their validity." *Id.*

*Gold v. City of Miami*, 151 F.3d at 1350 (emphasis added). While Pollard has been the subject of two § 1983 suits, one was settled and the other ended in a judgment for Pollard. There is no consistent history of excessive force actions that Gadsden has been required to settle on Pollard's behalf. Further, the two complaints against Pollard by residents and others that actually resulted in reprimand had little or nothing to do with the claims of excessive force alleged in the instant suit. The Court finds no genuine issue of triable fact with respect to the issue of municipal liability. Therefore, the Court will GRANT the motion for summary judgment on the claim of excessive force against Gadsden and such claim shall be DISMISSED, with prejudice.

## B. State-law battery claim.

Gadsden argues that pursuant to section 6-5-338(b) of the Alabama Code of 1975 it is protected by the same discretionary function immunity afforded its officers from Bowen's state-law battery claim against it based upon Pollard's actions. *Montgomery v. City of Montgomery*, 732 So.2d 305, 312 (Ala. Civ. App. 1999). However, for the same reasons that this Court found Pollard to be stripped of such immunity, it finds Gadsden to be stripped of such immunity. Further, Gadsden is not afforded the immunity set forth in section 11-47-190 of the Alabama Code of 1975, limiting the liability of municipalities to injuries suffered "through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty. . . ." However, in *Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala. 1995), the Alabama Supreme Court concluded that the substantive immunity set forth in section 11-47-190 was not applicable to assault and battery claims arising out of excessive force used by an officer in the line and scope of his duties.

Gadsden can be held liable under state law for any successful claim of battery brought by Bowen.  On this issue, therefore, summary judgment will be DENIED.

## Conclusion

For the aforementioned reasons, summary judgment will be GRANTED, in part, and DENIED, in part.  The claim of excessive force in violation of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983 against the City of Gadsden will be DISMISSED, with prejudice.  The following claims may proceed to trial:

1. Bowen's Fourth Amendment excessive force claim against Pollard;
2. Bowen's excessive force battery claim against Pollard; and
3. Bowen's excessive force battery claim against Gadsden.

DONE and ORDERED this 31st day of January, 2000.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE